**Darrell RUSSELL, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 07–94–0230–CR.

Court of Appeals of Texas,
Amarillo.

July 25, 1995.

Rehearing Overruled Aug. 29, 1995.

Law Offices of Gene Steed, Gene Steed, Perryton, Law Offices of Larry Warner, Larry Warner, Brownsville, for appellant.

Ochiltree County Atty., Bruce Roberson, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In seven points of error, appellant Darrell Russell challenges his conviction of the offense of possession of more than five pounds but less than fifty pounds of marijuana, a second degree felony. His punishment, assessed by the trial court, was set at eighteen (18) years confinement in the Texas Department of Criminal Justice, Institutional Division with a fine of $7,500. We affirm the judgment of the trial court.

In five of his seven points, appellant contends the trial court erred in: (1) denying his petition to secure the attendance of out-of-state witnesses; (2) failing to charge the jury on entrapment; (3) overruling his objection "that the prosecutor had incorrectly allocated the burden of coming forward with the evidence to the defendant;" (6) holding appellant had waived his right to a hearing on the admissibility of evidence obtained as the result of a search and to a hearing on the admissibility of a confession; and (7) admitting prejudicial hearsay as to appellant being a narcotics offender and that he was possibly transporting narcotics. In his two remaining points, appellant further asserts that (4) the district attorney committed fundamental error in offering his personal opinion as to appellant's guilt in his opening statement; and (5) his rights under the Texas Constitution were violated when the jury received evidence obtained as the result of a pretext arrest.

Briefly stated, the State's evidence showed that on October 10, 1992, appellant, in a vehicle owned and driven by him, was returning from a trip to Nebraska. He was accompanied by James Dixon, a paid confidential informant for the Clovis, New Mexico Police Department. Ochiltree County deputy sheriff Delvin Drum and City of Perryton police officer Alan Mires had been alerted that a vehicle answering the description of the one owned by appellant would be coming through their county containing contraband. As the officers saw appellant's vehicle approaching them on the opposite side of the highway, they crossed over the median and began following it. The officers attested that while they were behind the vehicle, the driver applied his brakes, revealing that one of the brake lights was malfunctioning.

According to the officers, they pulled the vehicle over because of the defective brake light. When the car had come to a stop, appellant exited the car and Deputy Drum met him at the rear of the vehicle. Drum asked appellant if he was carrying any marijuana in the vehicle and, although appellant denied doing so, Drum averred he could smell marijuana. Consequently, Drum approached the vehicle and looked inside. Upon doing so, he was able to see "some green Army type duffle bags in the back seat and they were gaping open with marijuana stems and such visible from the top." Appellant was then arrested and charged with the possession offense of which he was ultimately convicted. Other portions of the evidence will be referred to as may be necessary in the discussion of this appeal.

As appellant's first two points concern alleged errors affecting his right to assert an entrapment defense, we must first decide whether he was entitled to that defense. The section of the Texas Penal Code governing entrapment provides:

It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Tex.Penal Code Ann. § 8.06(a) (Vernon 1994).

It has long been established in this State that the defense of entrapment is not available to a defendant who denies that he committed the offense charged. *Warren v. State*, 565 S.W.2d 931, 933 (Tex.Crim.App. 1978); *Stephens v. State*, 522 S.W.2d 924, 926 (Tex.Crim.App.1975). The defense is not available in such instances because entrapment necessarily assumes the act charged was committed. *Id.* However, the defendant who pleads not guilty and who does not take the stand or offer any testimony incon-

sistent with his or her commission of the crime is still entitled to offer a defense of entrapment. *Norman v. State*, 588 S.W.2d 340, 345 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980).

In the seminal case of *England v. State*, 887 S.W.2d 902 (Tex.Crim.App.1994), the Texas Court of Criminal Appeals had occasion to explicate what is required under section 8.06 in order to entitle a defendant to claim its benefit. The court commented that, contrary to some of its earlier expressions, the statute's effect was to embrace a "subjective/objective test" which, in the court's words, "requires an accused who claims entrapment to produce evidence that he was actually induced to commit the charged offense; that is to say, that he committed the offense 'because he was induced to do so'." *Id.* at 913.

■ Here, appellant took the stand and testified in his own behalf. Because of its importance in determining the questions presented in his first two points, we will review the pertinent parts of that testimony in some detail. At the time of his testimony, appellant had been implicated in the crime not only by the circumstances surrounding his arrest, but also by James Dixon. Dixon testified that he and appellant undertook the trip to Nebraska, from which they were returning at the time of the arrest, for the purpose of obtaining marijuana to be sold by appellant in the Clovis, New Mexico area. Subsequent to appellant's testimony, his estranged inamorata, Sharon Crank, verified Dixon's testimony about the purpose of the trip.

In his testimony, appellant stated he had moved from Clovis to Perryton to "get away from all of the drugs and stuff that was going on in Clovis." He had become acquainted with Dixon while living in Clovis where they had done cocaine "[a]lmost every day for quite a while." Appellant explained that Dixon was his "doctor," the person who would inject him with cocaine because he could not do so himself. He specifically denied that he had ever been involved in a "joint venture" with Dixon to go to Nebraska and obtain "pot" to take back to Clovis.

According to appellant, after he had moved to Perryton, he returned to Clovis for a visit. While there, he saw Dixon who was planning to go to Nebraska to pick up some clothes for his wife's children. At that time, appellant told Dixon he could use his car "because it got good gas milage." Appellant denied that he had ever called Dixon and asked him to go to Nebraska to pick up marijuana, explaining that he did not "even have a telephone."

Appellant averred that on the morning of October 10, 1992, at approximately 1:00 a.m., Dixon unexpectedly entered appellant's home in Perryton, walked into the bedroom and awoke appellant. Dixon was carrying one of the duffle bags which later contained the marijuana found in appellant's car at the time of his arrest. Dixon told appellant "he was going to pick up some clothes for his kids and he needed [appellant] to help drive because it was such a long distance." When queried by his counsel whether he had "any intent to go up there and pick marijuana at all," appellant emphatically responded, "No, sir, none whatsoever."

Just after crossing the Nebraska state line, appellant and Dixon pulled over at a rest stop. At that point, appellant asked Dixon if they were going to "rest" before continuing on. Appellant averred that Dixon told him this was as far as they were going and that he was "going down in this field to pick pot." Appellant testified that he became very upset and told Dixon, "Well, I want to go home. I want to go back, but I ain't got the money to go back." He related that Dixon told him, "Well, you are just going to have to stay here with me then." Appellant explained that he "was stuck" because, at the time, he was "totally broke" and did not even have a quarter to make a phone call. As Dixon went to pick the marijuana, appellant reclined his car seat and went to sleep. Dixon filled both of the duffle bags he had brought with the marijuana and threw them in the back seat of appellant's car.

When his counsel inquired as to when he discovered Dixon "had come up there to get pot," appellant replied, "As soon as he come up from down in that field and he had pot was when I knew for sure that's what he was

doing." On the way back to Texas, Dixon told appellant he had to stop and telephone his girlfriend. While Dixon made the call, apparently for the purpose of alerting the police, appellant stayed in the car. According to appellant, he was "pretty pissed off" but "[t]here wasn't nothing [he] could do." He reiterated that the only reason he continued the trip back was because he did not want to leave his car with Dixon, who he did not trust and considered to be "flaky."

Appellant testified that when he was arrested, he asked to speak to a narcotics officer in order to "give a statement against Dixon." He also insists that his statement, which was received into evidence, was typed by a police officer and contained many errors and incorrect incriminating references to him.

In contending, *inter alia,* that he was entitled to the defense of entrapment because "he admitted the offense," appellant emphasizes the following colloquy during the direct examination by his counsel:

Q. And did he [Dixon] persuade you to haul that stuff back to Texas, something you would not have otherwise done?

A. Yes, sir.

However, the record shows that immediately preceding that portion of the examination, the following testimony was elicited from appellant:

Q. All right. And did you own any of this alleged marijuana?

A. No. None of that is mine. That is Darrell Dixon's (sic) right there (Indicating). Just because it was in my car don't make that mine. That is his.

Q. And you never picked it?

A. No.

Q. And you were not in control of it?

A. No, sir.

Q. Who was in control of it?

A. Darrell Dixon was in control of it.

Considered in its proper context, rather than being an admission of guilt, the colloquy appellant relies upon was a continuing and adamant denial of any culpability. Indeed, appellant's testimony is consistent in his denial of participation in any offense.

Citing such cases as *Carter v. State,* 515 S.W.2d 668 (Tex.Crim.App.1974) and *Woodfox v. State,* 779 S.W.2d 434 (Tex.Crim.App. 1989) for the general proposition that a requested charge on a defensive theory must be submitted to the jury if the theory is raised by evidence from any source, appellant contends the evidence *in toto,* including that relating to Dixon's relationship with the police, entitled him to a jury question on entrapment. However, appellant's reliance is misplaced as neither of the cases on which he relies involved the entrapment defense. Moreover, under the authorities we have discussed above dealing specifically with entrapment, a defendant is not entitled to submission of the entrapment defense if he denies his commission of the offense.

■ In a post-submission memorandum, appellant also advances the proposition that the trial court reversibly erred in refusing to honor his request to secure the attendance of out-of-state witnesses. He further contends that because of that refusal, he was unable to present an entrapment defense and, thus, reversal is required.

In connection with our discussion of this argument, we note that on October 21, 1993, the trial court found appellant to be indigent and appointed him trial counsel. On May 10, 1994, the trial court overruled his petition to secure out-of-state witnesses because their presence was "NOT necessary for the administration of justice" and because appellant had not "tendered for transmittal to the purposed witnesses, travel expenses nor the daily per diem necessary for their attendance as witnesses." For the purpose of our discussion, we will assume, *arguendo,* that the trial court's overruling of the motion on the basis of appellant's failure to tender the expenses and per diem was error.

In *Norman v. State,* 588 S.W.2d at 340, the Texas Court of Criminal Appeals was faced with a similar question. In that case, the defendant, convicted of the offense of delivery of heroin, had requested a grant of immunity from prosecution for the State's informant/agent in order to obtain the informant's testimony which, defendant alleged, was necessary to her asserted defense of

entrapment. *Id.* at 343. The trial court refused. On appeal, the high court held that under the circumstances of the case, the defendant had a right to call the agent as a defense witness and the trial court's refusal to comply with her request for immunity for the witness amounted to constitutional error. *Id.* at 345. Thus, the court said the next inquiry was to determine whether the error was harmless or required reversal by looking to the materiality and relevance of the witness's proposed testimony.

In making its review, the court noted the defendant was attempting to show a "vicarious" entrapment defense, *i.e.,* one where the agent had possibly entrapped one individual, who enlisted the help of the defendant's husband, who then enlisted the defendant in the heroin delivery. The court held the connection between the defendant and the alleged entrapment was too tenuous to entitle her to claim she was entrapped. *Id.* at 346. As material here, the court concluded the defendant was not entitled to the entrapment defense and, thus, "any error by the trial court in not compelling the State's informant Hamilton to give answers to entrapment questions of the defense" was harmless beyond a reasonable doubt. *Id.* at 346–47.

Although appellant argues that *Norman* can be distinguished on the basis that it involved an attempt to show "vicarious" entrapment rather than direct entrapment, as asserted here, we disagree. The question before the *Norman* court was the same as that now presented to us, *viz.,* whether trial court error in denying a defendant access to testimony bearing on the defense of entrapment requires a reversal when the record shows the defendant is not entitled to the defense. The *Norman* court's reasoning and holding is applicable here and requires us to overrule appellant's first point. Additionally, for the reasons we have expressed above, and because he denied the commission of the charged offense, appellant was not entitled to claim entrapment and was not entitled to an entrapment charge. Appellant's second point is overruled.

The gist of appellant's third point challenge is that the trial court reversibly erred in allowing the prosecutor to ask the jury panel, during his voir dire examination, "Is there anyone who doesn't understand that the Defendant has to come forward with some credible evidence that he was entrapped ...?" Appellant timely objected to the question as a misstatement of the law and such objection was overruled. However, prior to this occasion, the prosecutor had inquired, without objection, if there was any member of the jury panel who did not understand that in order for a defendant to be entitled to an acquittal based upon the defense of entrapment "he has to come forward with evidence of two things?" He continued, without objection, "Now, don't get me wrong. The State still has the burden of proof, but he [appellant] has to come forward with evidence that two separate things occurred." The prosecutor then went on to advise the panel that a defendant first had to show that the police induced the defendant to commit the offense and, second, that the police conduct would persuade the average, law-abiding citizen to engage in the crime. He then proceeded to interrogate individual panelists about those comments. Next, the prosecutor told the panel, without objection, that he would submit "the Defendant will not come forward with sufficient evidence on either one of these issues."

Continuing without objection, the prosecutor then told the panel there would be no evidence "that the law enforcement agent offered such an inducement to this Defendant that it would have overcome even law-abiding citizens." He then asked if there was any member of the panel who would be unwilling or unable to return a guilty verdict "if the issue of entrapment is the only issue, if the Defendant doesn't come forward with that kind of evidence?" It was subsequent to these events that the comment giving rise to appellant's objection occurred.

■■■ Initially, to preserve a question for appellate review, it is the obligation of the complaining party to make a timely, specific objection. To be timely, the objection must have been made at the earliest possible opportunity. *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); Tex.R.App. P 52(a). Objections made after

questions are answered do not preserve error for appeal. *Juhasz v. State*, 827 S.W.2d 397, 401 (Tex.App.—Corpus Christi 1992, pet. ref'd). Absent two exceptions not present here, a party must continue to object each time inadmissible evidence is offered in order to preserve error. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). The same rules are applicable to prosecutor's arguments and statements. *See Dickerson v. State*, 866 S.W.2d 696, 699 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *Harris v. State*, 866 S.W.2d 316, 326 (Tex.App.—San Antonio 1993, pet. ref'd).

 Additionally, entrapment is a defense to prosecution, as opposed to an affirmative defense. Thus, while the burden of producing evidence to raise the defense is upon a defendant, the burden of persuasion to disprove the defense after it has been raised remains with the State. *Reese v. State*, 877 S.W.2d 328, 333 (Tex.Crim.App. 1994); *Becker v. State*, 840 S.W.2d 743, 746 (Tex.App.—Houston [1st Dist.] 1992, no pet.). *See Hill v. State*, 765 S.W.2d 794 (Tex.Crim. App.1989). Thus, even if the error had been preserved for our review, the prosecutor's remarks concerning the burden to produce evidence concerning entrapment do not warrant reversal. In any event, as appellant was not entitled to have the jury consider an entrapment defense, any misstatements of the law pertaining to the defense that were made by the prosecutor could not have reversibly influenced the jury in that regard. Appellant's third point is overruled.

In his fourth point, appellant suggests the prosecutor reversibly erred by concluding his opening statement to the jury with the comment, "I am persuaded or I wouldn't be here today that you will find that the evidence will resoundingly justify a verdict of guilty in this case, and we will ask for that verdict of guilty at the conclusion of the evidence."

 As appellant recognizes, no objection was made to this portion of the State's argument. The general rule in Texas is that to preserve error committed during jury argument, the defendant must object and receive an adverse ruling. *Purtell v. State*, 761 S.W.2d 360, 372 (Tex.Crim.App.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); Tex.R.App. P. 52(a). There is an exception to the rule when the argument is so prejudicial that an instruction to disregard the argument could not cure the harm. *Harris v. State*, 784 S.W.2d 5, 12 (Tex.Crim.App.1989). After noting the exception, the *Harris* court quoted, with approval, the characterization of the exception made in *Rodriguez v. State*, 646 S.W.2d 539, 542–43 (Tex.App.—Houston [1st Dist.] 1982, no pet.):

> [as where] an argument is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on the juror's minds (sic).

*Harris*, 784 S.W.2d at 12, n. 5.

 Arguments similar to that made by the prosecutor in this case have been held to not reflect error or, if erroneous, to be curable by instruction and not so serious as to fall within the exception to the general rule. *See id.* (court held that prosecutor's statement, "I think you know my opinion is, you bet, 'Yes' is a correct answer [to the special issues at punishment]" in a capital murder case was curable by instruction and thereby not preserved because of failure to object); *Villarreal v. State*, 716 S.W.2d 640, 642 (Tex.App.—Corpus Christi 1986, no pet.) (prosecutor's argument that "as far as I'm concerned, the man is guilty," was curable by an instruction to disregard); *Lookingbill v. State*, 855 S.W.2d 66, 76–77 (Tex.App.—Corpus Christi 1993, pet. ref'd) (prosecutor's argument that "I can tell you, ladies and gentlemen, that the State has proven its case beyond a reasonable doubt and that you must follow the law and that you have no choice but to find the Defendant guilty of capital murder" was curable by instruction but the defendant's failure to object waived appellate review).

Indeed, in *Miller v. State*, 566 S.W.2d 614 (Tex.Crim.App.[Panel Op.] 1978), the court held a prosecutor's argument that "I just ask you to find him guilty because he is guilty under the evidence" constituted nothing more than the prosecutor's deduction of what the evidence showed and thus did not constitute reversible error. *Id.* at 620. In *Salazar v. State*, 716 S.W.2d 733 (Tex.App.—Corpus

Christi 1986, pet. ref'd), after first cautioning the jury that what he said was not evidence, the prosecutor argued, "I'm telling you that if you go back there and after considering this evidence, believe me, if you release this man you're letting a guilty man go." *Id.* at 737. The court held no reversible error was presented because the prosecutor qualified his argument with references to the evidence, thus, "[h]is argument was not an unrestricted expression of his personal opinion regarding appellant's guilt." *Id.*

Appellant suggests that because of the popularity of the prosecutor and his acquaintance with the members of the jury panel, this was an instance in which an instruction to disregard would not have sufficed to remove any expression of opinion and, therefore, reversal is required. We disagree. Even if the prosecutor's argument constituted error, there is nothing in this record to indicate that the jury would have been unable to follow an instruction to disregard. Thus, as the argument does not fall within the perimeters of fundamental error, appellant's fourth point of error is overruled.

In his fifth point, appellant argues that his rights "under the state constitution" were violated when the marijuana found in his car was received into evidence because the marijuana had been seized as the result of a pretext arrest. The evidence related to this point reveals that the day prior to appellant's arrest, Ochiltree County deputy sheriff Tony Mitchell met with Dixon and instructed him to call and inform Mitchell as to whether he and appellant were transporting marijuana and what route they would be taking on their return from Nebraska. Mitchell testified that the purpose of the call was "so [he] would know about when they would be arriving in Perryton." Dixon complied with the instructions and telephoned the sheriff's department, telling Mitchell where he and appellant were. After receiving the call, Mitchell headed north to locate the vehicle. He also notified Drum and Mires that, according to the information he had received, the car should be returning to Texas about 3:00 p.m. and the officers should stop the car based on Dixon's information that it contained marijuana. Mitchell located the car just south of Liberal, Kansas, and kept it under surveillance until the Texas officers made the stop. Although he witnessed the arrest, he did not approach the scene because he had an agent of the New Mexico Metro Narcotics Task Force with him whom he did not want appellant to see.

Under this background and the information available, appellant argues the State should have obtained an arrest warrant and that the warrantless stop of his car, assertedly because of an improper brake light, was a mere pretext tainting the seized evidence. Therefore, he contends the marijuana obtained as a result of that pretext stop was inadmissible under the Fourth Amendment to the United States Constitution and article 1, section 9, of the Texas Constitution.

■ In response, the State, citing the rule that a point of error on appeal must correspond to the trial objection,[1] initially contends the trial objection, made by pretrial motion to suppress and reiterated by reference when the evidence was tendered, challenged the admission of the marijuana upon appellant's being "set up" and "entrapped" and never raised the pretextual stop and arrest question. We disagree. The thrust of appellant's challenge was that the officers lacked any probable cause for the warrantless arrest and included an argument that Mires and Drum "attempted to make up some sort of probable cause so they could stop this vehicle in an attempt to get whatever marijuana there might be into evidence in this case...." That argument is sufficiently broad to alert the trial court that appellant was asserting a pretext challenge not limited by the entrapment theory.

■ In both *Garcia v. State,* 827 S.W.2d 937 (Tex.Crim.App.1992) and *Crittenden v. State,* 899 S.W.2d 668 (Tex.Crim.App.1995), the Texas Court of Criminal Appeals was presented with challenges to the admissibility of evidence obtained as the result of alleged "pretext arrests." Each case arose out of stops made as the result of a traffic offense. *Garcia* involved the failure to stop at a stop sign while *Crittenden* involved an ille-

---

1. *See Turner,* 805 S.W.2d at 431; Tex.R.App. P. 52(a).

gal right turn. In *Garcia,* cocaine was discovered and its admissibility into evidence was challenged on the basis that it was seized as a result of a "pretext arrest" which violated the Fourth Amendment to the United States Constitution. In *Crittenden,* heroin was discovered and its admissibility into evidence was challenged on the basis that the arrest violated article 1, section 9 of the Texas Constitution. As explicated in those cases, the term "pretext" arrest or stop, refers to an objectively valid stop made for an allegedly improper reason. In other words, when an individual is validly stopped or arrested for one offense only because law enforcement officials desire to investigate that individual for a different offense for which they do not have valid grounds to stop or arrest.

In both *Garcia* and *Crittenden,* the court discussed the three approaches courts have taken when considering the validity of challenges to such pretextual arrests or stops— the objective test, which we will discuss below; the subjective test, in which the officer's actual motives in making the arrest are determinative; and the modified objective test, which requires a determination as to whether the officers would have made the stop or arrest, even if the stop or arrest is valid, absent a desire to investigate the different offense. In both cases, the court opted to adopt the objective test by which to gauge the validity of the arrest or stop.

In articulating the objective test, the *Garcia* court commented:

> As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation,* regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention. Thus, the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense; an officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual.

*Garcia,* 827 S.W.2d at 944 (emphasis in original). Although the *Garcia* adoption and discussion was in connection with a Fourth Amendment claim, as we have mentioned above, application of the objective test was expressly extended to challenges made under article 1, section 9 of the Texas Constitution in *Crittenden.*

 Under our statutes, driving an automobile with a defective brake light is a violation of the law for which one can be arrested. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 111, 118 & 153 (Vernon 1977). It is also well settled that a traffic violation committed in an officer's presence authorizes an initial stop. *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App.1982). In this case, when the officers observed the defective brake light on appellant's automobile, they were entitled to stop the vehicle regardless of their subjective desire to search the car. When the car was stopped, the officers assumed a lawful position whereby they could smell and see the marijuana. Their observation of the marijuana provided probable cause to make an arrest and to seize the contraband. *See Martin v. State,* 780 S.W.2d 497, 500–01 (Tex.App.—Corpus Christi 1989, pet. ref'd).

Even assuming the objective test is applicable, appellant contends the officers did not have a valid reason to make the initial traffic stop. In making that argument, he relies upon *Vicknair v. State,* 751 S.W.2d 180 (Tex. Crim.App.1986). In that case, the court held the officers were not entitled to stop an automobile because of a cracked tail light lens as a cracked lens did not constitute a violation of Texas law. Thus, the court concluded the ensuing arrest was invalid. *Id.* at 189–90. However, *Vicknair* is distinguishable from the instant case because the stop made here was the result of a *nonfunctioning* brake light which, under the statutes we have cited above, was a violation of our traffic laws. Thus, a traffic stop was authorized and the subsequent arrest was valid. Appellant's fifth point is overruled.

The gist of appellant's sixth point challenge is that the trial court reversibly erred in holding he had waived his right to a pretrial hearing on his motions to suppress.

The record shows that on May 6, 1994, appellant filed a motion to suppress the evidence seized at the time of his arrest and a motion to suppress his confession. By order executed and filed on May 23, 1994, the trial court recited that on May 19, 1994, at a pre-trial hearing on the motions to suppress, appellant's attorney appeared and announced to the court that his client "had elected not to appear for the hearing despite his attorney's request and demand that he [appellant] appear for the hearing." Noting that the hearing had been set for approximately two weeks and that appellant and his attorney had received adequate notice of the setting, the trial court found that appellant "by his voluntary absence for the hearing, has waived hearing on these pre-trial matters and it is therefore ORDERED that hearing on these matters is waived."

On May 23, 1994, the day trial commenced, the trial court conducted a pre-trial hearing immediately prior to the voir dire examination of the jury panel. During that hearing, counsel for appellant reurged the motion to suppress the confession "which ha[d] been overruled by the Court." Subsequent to that statement, the following colloquy occurred:

> State: First off, Your Honor, I want to make sure the record doesn't get confused. The Court didn't overrule the motion to suppress. The Court—
>
> The Court: I waived pretrial hearing on the motion. I think you have got a right to urge that during trial. I think you can reurge your motion during trial if you want to, Mr. Steed.
>
> Defense Counsel (Mr. Steed): Thank you, Your Honor.

No specific mention was made of the motion to suppress evidence seized during the search.

During the course of the trial, and immediately prior to the receipt of the confession into evidence, defense counsel requested a hearing outside the presence of the jury in order to reurge the motion to suppress the confession. At the conclusion of the hearing, the trial court denied the motion. The jury then returned to the courtroom and the confession was received into evidence. The jury was also excused prior to the evidence officer's testimony in order to allow appellant to urge his motion to suppress the evidence seized as a result of the search of the vehicle. The motion was denied, the jury was returned to the courtroom and the marijuana received into evidence.

■ We initially note that a trial court is not required to hold a pre-trial hearing on motions to suppress. At its option, however, the court may hear such motions before trial or wait until the defendant makes a timely objection at trial before holding the hearing. If such an objection is made, the suppression hearing must then be held outside the presence of the jury. *Ross v. State*, 678 S.W.2d 491, 493 (Tex.Crim.App.1984). Here, the trial court properly followed this procedure. Additionally, appellant failed to object to that procedure and, in fact, implicitly, if not explicitly, agreed to it. That being true, even if error had been present, it was not preserved for our review. *See Thomas v. State*, 884 S.W.2d 215, 216 (Tex.App.—El Paso 1994, pet. ref'd) (no error preserved where defendant agreed to hold motion to suppress until trial to be presented by proper objection but failed to later timely object). Appellant's sixth point is overruled.

■ In his seventh point, appellant contends the trial court erred in overruling his hearsay objection to the testimony of Ochiltree County deputy sheriff Mitchell that he had been informed by the Metro Narcotics Unit in Clovis, New Mexico, that "they believed that [appellant] was a narcotics offender and that he was possibly going to bring a quantity of narcotics through Perryton to Clovis." Mitchell made this statement in response to the State's questioning as to how appellant first came to the officer's attention in connection with this case. Upon appellant's hearsay objection, the State successfully argued that the testimony was not asserted for the truth of the matter, rather, it was simply to show "what brought him [appellant] to the attention of Mr. Mitchell."

After the trial court overruled appellant's objection, the State queried the officer specifically as to what he was told by the New Mexico officer. Upon appellant's objection, a hearing was held outside the presence of the

jury which resulted in the court overruling appellant's objection but instructing the jury that "the following evidence, which you will hear, is admitted for limited purposes to show probable cause and also to demonstrate why the officer acted as he did." After the court gave the limiting instruction, appellant sought, and was granted, "a continuing objection to it [the testimony] on the basis of hearsay." When the State again asked Mitchell what he was told with regard to appellant, the witness related that the New Mexico officer told him that an informant had told the unit that appellant "planned to move a quantity of marijuana through Perryton to Clovis and that possibly he would store a quantity of marijuana in Perryton before he moved it to Clovis or some other location." Appellant immediately objected to the testimony on the basis that the informant's name had not been revealed and the trial court overruled the objection.

In arguing no error is shown, the State relies upon the rule explicated in cases such as *Jones v. State,* 843 S.W.2d 487, 499 (Tex. Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993), that when testimony of like ilk is not introduced for the truth of the recitation but simply to show why an officer took an action, it is not subject to a hearsay objection. *Id.* at 499. In *Schaffer v. State,* 777 S.W.2d 111 (Tex. Crim.App.1989), the court cautioned that the rule was not so broad as to allow a witness "to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports." *Id.* at 114–15. However, the court noted that when an officer's actions are an issue before the jury, "it may be necessary for the officer to testify not only how he happened upon the scene, but also the specific information received so that the jury may resolve any issues regarding an officer's actions." *Id.* at 115 n. 4. Under this record, and with the limitation placed upon the testimony, the trial court did not reversibly err in allowing the witness's statements.

█ Additionally, when a defendant allows testimony which is substantially the same as that to which he has objected, or allows such testimony to come in from another source without objection, he may not complain of the testimony on appeal. *See Stoker v. State,* 788 S.W.2d 1, 14 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App. 1984); *Nicholas v. State,* 502 S.W.2d 169, 174 (Tex.Crim.App.1973).

█ On his recross-examination of Mitchell, appellant introduced the deputy's report of the investigation of this case. In the handwritten portion of the report, it was detailed that "Russell told Clovis Ci [confidential informant] that he would bring back fifteen or twenty pounds of marijuana. Russell has been selling 3/4 and 1 pound quantities in Clovis to Ci. Maybe hiding remainder in Perryton at home or at work." Further, the typed portion of the report under the heading "Synopsis" read, "This report concerns the importation of thirty four pounds of marijuana from Nebraska into Texas by the defendants for the purpose of resale." In the portion pertaining to the "History of the Case," it was stated that "[o]n 100992 (sic) Agent Mitchell received information from a Confidential Informant that Defendant Russell and Defendant Dixon were going to Nebraska to pick up a load of marijuana. The defendants were going to pick up the marijuana and bring it back to Perryton to defendant Russell's residence where the marijuana would then be taken to other locations and sold."

On its redirect-examination, the State questioned Mitchell, without objection, about portions of his report referring to information received from Sharon Crank that appellant had made prior trips to Nebraska to "harvest ditch weed" (marijuana). The State also asked Mitchell, without objection, about references to appellant's illegal activities which may have been based upon information from other informants.

On recross, appellant examined Mitchell in some detail about information he had received from Clovis about appellant's alleged sales of marijuana. Even assuming, *arguendo,* that appellant's "continuing objection" on the basis of "hearsay" was sufficient, without additional objection to preserve his complaint as to later testimony elicited by the State

concerning information given to Mitchell, it clearly would not extend to the similar evidence contained in the report introduced by appellant and later elicited by appellant. Accordingly, appellant has failed to show reversible error. His seventh point is overruled.

In sum, all of appellant's points are overruled and the judgment of the trial court affirmed.