TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00164-CR







John Slaughter, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0983649, HONORABLE JON N. WISSER, JUDGE PRESIDING








 Appellant John Slaughter appeals from his jury-trial conviction for aggravated
sexual assault. Tex. Penal Code Ann. § 22.021 (West Supp. 2001). The trial court assessed
appellant's punishment at imprisonment for life. Appellant asserts that the evidence is insufficient
to support his conviction, and that the trial court erred in admitting unlawfully obtained evidence
and in refusing to grant a mistrial. We affirm the judgment.

 The physically impaired victim was sexually assaulted in her dark bedroom. 
Because of the darkness and her farsightedness, the victim was unable to positively identify
appellant as the man who committed the crime. She testified, however, that she believed the man
who attacked her was African-American based on his voice, the texture of his pubic hair, and a
view of his forearm. Appellant is African-American. No fingerprints were found to identify the
victim's assailant. There was some difference in the size of appellant's foot and a footprint found
on the victim's bedroom floor. DNA evidence is the principal evidence identifying appellant as
the man who committed the assault.

 In his first and fourth points of error, appellant insists that the evidence is
insufficient to support his conviction and that the trial court erred in denying his motion for a
directed verdict. In reviewing the legal sufficiency of the evidence, "the relevant question is
whether, after viewing the evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord Patrick v. State, 906 S.W.2d 481, 486
(Tex. Crim. App. 1995); Geesa v. State, 820 S.W.2d 154, 167 (Tex. Crim. App. 1991); Roberson
v. State, 16 S.W.3d 156, 164 (Tex. App.--Austin 2000, pet. ref'd); King v. State, 17 S.W.3d 7,
13 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).

 Appellant first contends that because the State failed to prove a deadly weapon was
used the evidence is insufficient to support his conviction for aggravated sexual assault and that
the trial court erred in failing to grant his motion for an instructed verdict. It was alleged that
appellant used "a deadly weapon, to-wit: a knife, which in the manner of its use and intended use
was capable of causing death or serious bodily injury." Anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury is a deadly weapon. Tex. Penal
Code Ann. § 1.07(a)(17)(B) (West 1994); Bailey v. State, No. 1179-87, slip op. at 3 (Tex. Crim.
App. Feb. 14, 2001); see McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The
victim testified that she felt the edge of a metal object against the front of her throat and the back
of her neck. Although she did not see the object, she testified the object was straight edged,
sharp, and about six or seven inches in length. Based on the victim's description of the object held
against her throat and the back of her neck, police officers James Dixon and Marcelino Gonzales
testified the object was capable of causing death or serious bodily injury. In a similar case, the
evidence was held sufficient to prove an object was a deadly weapon; although the victim did not
see the weapon, she testified that it felt like a knife or an ice pick, and officers testified that the
weapon the victim described was capable of causing death or serious bodily injury. Regan v.
State, 7 S.W.3d 813, 819-20 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd). The evidence
in the instant case is sufficient to sustain the jury's implicit finding that a deadly weapon was used
to commit the sexual assault.

 Next, appellant complains that the evidence is insufficient because there was "a
break in the chain of custody of . . . the rape kit." Appellant argues that "the chain of custody gets
confusing" after the rape kit was "checked out" by Officer Gonzales. Gonzales delivered the kit
to the crime laboratory on October 28, 1997. Dr. Kathleen Corrado testified that on November
14, 1997, she took the kit from the evidence vault in the crime laboratory to work on the case. 
The kit admitted in evidence as State's Exhibit 17 was identified by Dr. Corrado. There is no
evidence that the rape kit's contents were tampered with or commingled with other evidence and
appellant makes no such claim. "Without evidence of tampering, most questions concerning care
and custody of a substance go to the weight attached, not the admissibility, of the evidence." 
Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); accord Medellin v. State, 617
S.W.2d 229, 231 (Tex. Crim. App. 1981); Porter v. State, 969 S.W.2d 60, 67 (Tex.
App.--Austin 1998, pet. ref'd). "If the State proves the beginning and the end of the chain of
custody, any gaps in between usually go to the weight and not the admissibility of the evidence." 
Davis v. State, 831 S.W.2d 426, 443 (Tex. App.--Austin 1992, pet. ref'd); accord Penley v.
State, 2 S.W.3d 534, 537 (Tex. App.--Texarkana 1999, pet. ref'd). When the State completes
the chain of custody from the initial collection of evidence to the laboratory, most questions
concerning the care and custody, including gaps and minor theoretical breaches, go to the weight
of the evidence, not its admissibility. Porter, 969 S.W.2d at 66; see also Avila v. State, 18
S.W.3d 736, 739 (Tex. App.--San Antonio 2000, no pet.); Moore v. State, 821 S.W.2d 429, 431
(Tex. App.--Waco 1991, no pet.). The rape kit and its contents were properly admitted in
evidence for the jury's consideration. Any rational trier of fact could have found that the elements
of the offense depending on the evidence furnished by the contents of the rape kit were established
beyond a reasonable doubt. There was no gap in the chain of custody of the rape kit that rendered
the evidence insufficient to support the jury's verdict.

 Finally, appellant urges that the evidence is insufficient because: "There was no in-depth discussion of how the [DNA] tests work together or how the frequencies were determined
for the jury to make an informed decision as to guilt or innocence." DNA evidence alone may be
sufficient to identify an alleged defendant. Roberson, 16 S.W.3d at 164-72.

 The expert witness's explanation of DNA testing and its use in identifying the
appellant in this case was quite similar to that described in the Roberson opinion. See id. at 161-63. Michelle Lockhoof, a DNA analyst for the Texas Department of Public Safety Crime
Laboratory, the expert witness in the Roberson case, was also the expert witness who testified in
this case. In this case, Dr. Corrado and Lockhoof explained DNA testing methods. The expert
witnesses explained two types of tests to the jury. The polymerase chain reaction (PCR), a
screening test used in quickly testing small stains, and the restriction fragment length
polymorphism (RFLP), a test requiring more time and good quality DNA. Dr. Corrado testified
that the probability of another person having the same DNA profile as appellant was "one in 5.5
billion . . . what I can say is that I would expect to find this profile in approximately one out of
5.5 billion people . . . given the rarity of the [appellant's] profile, I would think it's extremely
unlikely that another person would have the same profile." The State is not required to call a
mathematical expert to testify about the possible interpretations of statistical evidence. Griffith v.
State, 976 S.W.2d 241, 251 (Tex. App.--Amarillo 1998, no pet.). Appellant's complaint
concerning the lack of "in-depth discussion of how [DNA] tests work" is without merit. Viewed
in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the charged offense beyond a reasonable doubt. Appellant's first and fourth
points of error are overruled.

 In his second point of error, appellant urges that the trial court erred in admitting
in evidence unlawfully seized samples of his blood, saliva, and hair. These samples were obtained
with a search warrant. Appellant asserts that the search warrant affidavit fails to show probable
cause for the search. Also, he asserts that the facts establishing probable cause were stale.

 Whether the facts alleged in a probable cause affidavit sufficiently support a search
warrant is determined by examining the totality of the circumstances. Illinois v. Gates, 462 U.S.
213, 230-31 (1983); Ramos v. State, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996);
Hackleman v. State, 919 S.W.2d 440, 447 (Tex. App.--Austin 1996, pet. ref'd untimely filed). 
The probable cause determination is simply a practical common sense decision whether, given the
circumstances described in the affidavit, there is a fair probability that the item to be searched for
or seized will be found in a particular designated place. Hackleman, 919 S.W.2d at 447. "The
allegations are sufficient if they would 'justify a conclusion that the object of the search is
probably on the premises.'" Ramos, 934 S.W.2d at 363 (quoting Cassias v. State, 719 S.W.2d
585, 587 (Tex. Crim. App. 1986)). "The magistrate is permitted to draw reasonable inferences
from the facts and circumstances alleged." Id.; accord Gish v. State, 606 S.W.2d 883, 886 (Tex.
Crim. App. 1980). In determining whether an affidavit for a search warrant shows probable
cause, a reviewing court looks to the four corners of the affidavit. Massey v. State, 933 S.W.2d
141, 148 (Tex. Crim. App. 1996); Doescher v. State, 578 S.W.2d 385, 387 (Tex. Crim. App.
1978); Hackleman, 919 S.W.2d at 447; Carroll v. State, 911 S.W.2d 210, 216 (Tex.
App.--Austin 1995, no pet.). The information alleged in a search warrant affidavit need not
"match in quality or quantity the evidence necessary to obtain a conviction." Janecka v. State, 739
S.W.2d 813, 823 (Tex. Crim. App. 1987).

 A search warrant may be issued to search for and seize property or items
constituting evidence of an offense or constituting evidence tending to show that a particular
person committed the offense. Tex. Code Crim. Proc. Ann. art. 18.02(10) (West Supp. 2001). 
Blood is an item of evidence that may be seized when authorized by a search warrant. Gentry v.
State, 640 S.W.2d 899, 902 (Tex. Crim. App. 1982). A search warrant may not be issued
pursuant to subdivision (10) of article 18.02 of the Code of Criminal Procedure unless the sworn
affidavit sets forth sufficient facts to establish probable cause. Tex. Code Crim. Proc. Ann. art.
18.01(c) (West Supp. 2001). The facts necessary to establish probable cause pursuant to article
18.02(10) are as follows : (1) that a specific offense has been committed, (2) that the specifically
described property or items that are to be searched for or seized constitute evidence of that offense
or evidence that a particular person committed that offense, and (3) that the property or items
constituting evidence to be searched for or seized are located at or on the particular person, place,
or thing to be searched. Id.; see also Hinsley v. State, 722 S.W.2d 476, 477-78 (Tex.
App.--Dallas 1986, no pet.)

 The affidavit supporting the search warrant in this case stated:


AFFIDAVIT FOR SEARCH WARRANT



THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE
LAWS OF TEXAS BEING DULY SWORN ON OATH MAKES THE
FOLLOWING STATEMENTS AND ACCUSATIONS:


(1) THERE IS IN TRAVIS COUNTY, TEXAS, SUSPECTED PERSON
DESCRIBED AS FOLLOWS:


 SLAUGHTER JOHN ANTONIO B/M 10-23-1976


(2) SLAUGHTER JOHN, HEREINAFTER REFERRED TO AS THE
SUSPECT, IS CURRENTLY IN TRAVIS COUNTY JAIL, CHARGED
WITH - EVADING ARREST, SUSPICIOUS PERSON, ATTEMPTED
BURG, AND REQUEST TO APPREHEND (AGG. SEXUAL ASSAULT)
SUSPECT WAS ARRESTED AFTER EVADING ARREST FROM 11712
TALLOW FIELD, CITY OF AUSTIN, TRAVIS COUNTY, WHICH
OCCURRED ON OR ABOUT THE 20TH DAY OF OCTOBER, 1997 A.D.


(3) IT IS THE BELIEF OF THE AFFIANT THAT A SPECIFIC CRIMINAL
OFFENSE HAS BEEN COMMITTED. AFFIANT HAS REASON TO
BELIEVE THAT THE SUSPECT IS THE PERSON TO COMMIT THE
SAID OFFENSE, TO-WIT: AGG. SEXUAL ASSAULT, IN THE COUNTY
OF TRAVIS, CITY OF AUSTIN, TEXAS, AT 1805 MORNING QUAIL
DR. ON OCT. 20TH 1997. AFFIANT BELIEVES THAT SUSPECT
KNOWINGLY ENTERED THE VICTIM'S HOME THROUGH A
BEDROOM WINDOW AND THREATENED VICTIM WITH A KNIFE. 
SUSPECT THEN ASSAULTED VICTIM BY PENETRATING HER ANUS
WITH HIS PENIS.


(4) IT IS THE BELIEF OF THE AFFIANT THAT PHYSICAL EVIDENCE
FOUND BY THE AUSTIN POLICE DURING THE INVESTIGATION OF
THE ABOVE-DESCRIBED OFFENSE SHOULD BE COMPARE TO BODY
SAMPLES COLLECTED FROM SUSPECT, TO WIT:


 A. SAMPLES OF BLOOD, SALIVA, HAIR (PUBIC, BODY, HEAD)


(5) AFFIANT'S BELIEF OF THE FOREGOING PARAGRAPHS LISTED
ABOVE ARE BASED ON THE FOLLOWING FACTS AND
CIRCUMSTANCES HEREIN REFERRED TO AS PROBABLE CAUSE AS
SHOWN BY THE FOLLOWING WHICH IS INCORPORATED IN AUSTIN
POLICE INCIDENT REPORT XX-XXXXXXX . AFFIANT HAS READ
AND RELIES ON THE INFORMATION IN THE POLICE REPORT TO
OBTAIN THE PROBABLE CAUSE BELOW.


 A. THE AFFIANT IS A POLICE OFFICER ASSIGNED TO THE SEX
CRIMES DETAIL OF THE AUSTIN POLICE DEPARTMENT AND
IS RESPONSIBLE FOR THE INVESTIGATION OF SEXUAL
ASSAULTS AND/OR EXPOSURE OFFENSES.


 B. ON 05-02-1997, THE AFFIANT RECEIVED A.P.D. INCIDENT
REPORT #XX-XXXXXXX, INITIATED BY OFFICE J. DIXON 2562, A
COMMISSIONED PEACE OFFICER. THE REPORT STATES THAT
THE VICTIM, CREDIBLE ADULT FEMALE AUSTIN RESIDENT,
WENT TO ST. DAVIDS HOSPITAL FOR A RAPE EXAM. 
EVIDENCE FROM THE RAPE EXAM WAS COLLECTED AND
TAKEN TO THE DEPARTMENT OF PUBLIC SAFETY
LABORATORY FOR PROCESSING.


 A SWORN AFFIANT [SIC] WAS GIVEN BY THE VICTIM. THIS
AFFIANT HAS READ ALL REPORTS AND STATEMENTS
CONCERNING THE AGGRAVATED SEXUAL ASSAULT.


 C. VICTIM REPORTED THAT ON 05-02-1997, SHE WAS AWAKENED
BY AN UNKNOWN SUSPECT ON TOP OF HER WITH HIS HAND
OVER HER MOUTH, AND A KNIFE IN THE OTHER HAND. 
VICTIM SAID THAT SHE FEARED FOR HER LIFE. SUSPECT
THEN FORCED HIS PENIS INTO THE VICTIMS MOUTH, MAKING
HER PERFORM ORAL SEX. SUSPECT THEN TURNED THE
VICTIM ON HER STOMACH AND INSERTED HIS PENIS INTO
HER ANUS.


 SUSPECT ENTERED THE BEDROOM WINDOW OF THE VICTIM
AND ALSO EXITED THE SAME WINDOW. SUSPECT COVERED
THE VICTIMS FACE WITH HIS HAND AND DISPLAYED A KNIFE.


 SUSPECT WAS DESCRIBED AS A BLACK MALE IN HIS LATE 20'S
EARLY 30'S LAST SEEN WEARING DARK CLOTHING AND
HAVING BALD OR SHAVED HEAD. SUSPECT TALKED IN A
CLEAR LOW VOICE. SUSPECT HAD MUSCULAR ARMS AND A
FLOWER SENT COLOGNE. SUSPECT DESCRIBED AS MEDIUM
BUILD ABOUT 6'00 FT. TALL.


 D. I RECEIVED INFORMATION ON OFFENSE REPORT #XX-XXXXXXX,
THAT OCCURRED ON 10-20-97, SUSPICIOUS PERSON,
ATTEMPTED BURGLARY OF RESIDENT, AND REQUEST TO
APPREHEND (AGG. SEXUAL ASSAULT).


 THE SUSPECT IN THIS CASE IS SLAUGHTER JOHN B/M 10-23-76. 
SUSPECT WAS IN THE BACK YARD OF 11712 TALLOW FIELD. 
OFFICERS ON THE SCENE WERE AWARE OF A RECENT
BURGLARY AT 11718 TALLOW FIELD. OFFICERS APPROACHED
AND IDENTIFIED THEMSELVES AND THE SUSPECT JOHN
SLAUGHTER RAN FROM OFFICERS. OFFICERS CHASED
SUSPECT INTO THE APARTMENT AT 11701 METRIC BLVD. #711. 
SUSPECT DOES NOT LIVE IN THE APARTMENT NOR DOES HE
GIVE AN AUSTIN ADDRESS. SUSPECT GAVE THE OFFICERS A
FALSE NAME, UPON FURTHER INVESTIGATION SUSPECT WAS
FOUND TO HAVE FIVE OUTSTANDING WARRANTS FROM BIG
SPRINGS, TEXAS.


 ONE OF THOSE WARRANTS IS NUMBER 96RS723 FOR
AGGRAVATED SEXUAL ASSAULT, THE BOND IS SET AT
30,000.00.


 I TALKED WITH MR. SLAUGHTER WHO STATED THAT HE HAS
BEEN IN AUSTIN FOR NINE MONTHS. MR. SLAUGHTER DOES
NOT HAVE A LOCAL AUSTIN ADDRESS. TWO RAPES HAVE
OCCURRED IN THE GRACYWOODS SUBDIVISION WHICH IS IN
THE IMMEDIATE AREA WHERE SUSPECT WAS FOUND IN THE
BACK YARD. SUSPECT ALSO MATCHES THE PHYSICAL
DESCRIPTION GIVEN BY THE VICTIM. SUSPECT WAS ASKED
FOR CONSENT FOR HIS BLOOD AND HAIR FOR COMPARISON
AND REFUSED.



 This affidavit alleges in detail that the specific offense of aggravated sexual assault
had been committed. It specifically describes the items to be seized as samples of blood, saliva,
and hair of appellant. The affidavit also states affiant's belief that the samples of blood, saliva,
and hair to be seized from appellant would be evidence tending to show that appellant was the
particular person who committed the offense.

 In applying the principles of Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997), regardless of whether we review the sufficiency of the warrant affidavit de novo; see Wynn
v. State, 996 S.W.2d 324, 326-27 (Tex. App.--Fort Worth 1999, no pet.); Lane v. State, 971
S.W.2d 748, 752 (Tex. App.--Dallas 1998, pet. ref'd); Wachter v. State, 961 S.W.2d 598, 600
(Tex. App.--San Antonio 1997, pet. ref'd); or we apply the abuse of discretion standard of review,
see State v. Bradley, 966 S.W.2d 871, 873-74 (Tex. App.--Austin 1998, no pet.); Daniels v.
State, 999 S.W.2d 52, 54 (Tex. App.--Houston [14th Dist.] 1999, no pet.); Barton v. State, 962
S.W.2d 132, 134-38 (Tex. App.--Beaumont 1997, pet. ref'd), we conclude that the magistrate
properly issued the search warrant, and that the trial court did not err in admitting in evidence the
appellant's blood sample.

 As the State suggests, the concept of "staleness" urged by appellant, is not
applicable to an affidavit supporting a search warrant authorizing a search for and seizure of
blood, saliva, and hair. The staleness rule is concerned with whether items to be searched for will
probably be in a designated place at the time of the proposed search. For probable cause to arrest,
it is simply necessary that there exist a probability that a crime has been committed and that the
person to be arrested committed it. Probable cause to search, on the other hand, ordinarily may
be said to exist only if it is established that certain identifiable objects are probably connected with
certain criminal activity and are probably to be found at the present time in a certain identifiable
place. Search cases then, in contrast to arrest cases, present the unique problem of whether the
probable cause which once existed has grown stale.(1)

 Staleness depends upon the circumstances of each case. Usually, search warrants
are concerned with the location of moveable objects such as stolen property or drugs. The
observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may be stale the
next day after the room has been cleaned; the observation of the burial of a corpse in a cellar may
well not be stale three decades later. Andresen v. State, 331 A.2d 78, 106 (Md. Ct. Spec. App.
1975), aff'd sub nom, Andresen v. Maryland, 427 U.S. 463 (1976). Blood, saliva, and hair will
always be found on or in the body of a suspect. Appellant's staleness argument is without merit. 
Appellant's second point of error is overruled.

 In his third point of error, appellant complains of the trial court's alleged abuse of
discretion in refusing to grant a mistrial. On direct-examination of Officer Marcelino Gonzales,
the prosecutor asked him about a conversation he had with appellant before appellant was arrested:


Q. (By Prosecutor) Without going into what was said, you went and met with
him, but you were unable to get a blood sample at that time?


A. Correct, at that time it was -- yeah, he didn't consent to that.


 DEFENSE COUNSEL: Judge, I'm going to object to -- I'm going to object
to any statements about conversations between my client and this officer.


 THE COURT: We'll sustain the objection.


 DEFENSE COUNSEL: I'm going to ask the jury to disregard the question
and the answer.


 THE COURT: Okay. The jurors will disregard the last question and answer.


 DEFENSE COUNSEL: And I move for a mistrial.


 THE COURT: That request is denied.



Appellant argues that a mistrial should have been granted because the response given by Officer
Gonzales indicating that appellant did not consent to giving a blood sample caused harm incurable
by an instruction to disregard.

 Appellant's objection was not sufficiently specific and it was untimely made after
the question was asked and answered. The non-specific, untimely objection failed to preserve the
error claimed on appeal. See Lagrone, 942 S.W.2d at 618; Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995); Russell v. State, 904 S.W.2d 191, 196-97 (Tex. App.--Amarillo 1995,
pet. ref'd); Juhasz v. State, 827 S.W.2d 397, 401 (Tex. App.--Corpus Christi 1992, pet. ref'd). 
Furthermore, the trial court's prompt admonition for the jury to disregard the question and answer
adequately preserved appellant's rights. Ordinarily, a prompt instruction to disregard will cure
error associated with an improper question and answer. Ovalle v. State, 13 S.W.3d 774, 783
(Tex. Crim. App. 2000). The asking of an improper question will seldom call for a mistrial,
because, in most cases, any harm can be cured by an instruction to disregard. Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999); Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex.
Crim. App. 1990); Webster v. State, 26 S.W.3d 717, 723 (Tex. App.--Waco 2000, no pet.). In
the context of this case, the trial court's admonition for the jury to disregard the question and
answer was sufficient. The trial court did not abuse its discretion in refusing to grant a mistrial. 
We overrule appellant's third point of error.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Yeakel, Patterson and Dally*

Affirmed

Filed: February 28, 2001

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1.   For a more extensive discussion of staleness, see Wayne R. LaFave, Search and Seizure
§ 3.7 (3d ed. 1996).


be said to exist only if it is established that certain identifiable objects are probably connected with
certain criminal activity and are probably to be found at the present time in a certain identifiable
place. Search cases then, in contrast to arrest cases, present the unique problem of whether the
probable cause which once existed has grown stale.(1)

 Staleness depends upon the circumstances of each case. Usually, search warrants
are concerned with the location of moveable objects such as stolen property or drugs. The
observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may be stale the
next day after the room has been cleaned; the observation of the burial of a corpse in a cellar may
well not be stale three decades later. Andresen v. State, 331 A.2d 78, 106 (Md. Ct. Spec. App.
1975), aff'd sub nom, Andresen v. Maryland, 427 U.S. 463 (1976). Blood, saliva, and hair will
always be found on or in the body of a suspect. Appellant's staleness argument is without merit. 
Appellant's second point of error is overruled.

 In his third point of error, appellant complains of the trial court's alleged abuse of
discretion in refusing to grant a mistrial. On direct-examination of Officer Marcelino Gonzales,
the prosecutor asked him about a conversation he had with appellant before appellant was arrested:


Q. (By Prosecutor) Without going into what was said, you went and met with
him, but you were unable to get a blood sample at that time?


A. Correct, at that time it was -- yeah, he didn't consent to that.


 DEFENSE COUNSEL: Judge, I'm going to object to -- I'm going to object
to any statements about conversations between my client and this officer.


 THE COURT: We'll sustain the objection.


 DEFENSE COUNSEL: I'm going to ask the jury to disregard the question
and the answer.


 THE COURT: Okay. The jurors will disregard the last question and answer.


 DEFENSE COUNSEL: And I move for a mistrial.


 THE COURT: That request is denied.



Appellant argues that a mistrial should have been granted because the response given by Officer
Gonzales indicating that appellant did not consent to giving a blood sample caused harm incurable
by an instruction to disregard.

 Appellant's objection was not sufficiently specific and it was untimely made after
the question was asked and answered. The non-specific, untimely objection failed to preserve the
error claimed on appeal. See Lagrone, 942 S.W.2d at 618; Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995); Russell v. State, 904 S.W.2d 191, 196-97 (Tex. App.--Amarillo 1995,
pet. ref'd); Juhasz v. State, 827 S.W.2d 397, 401 (Tex. App.--Corpus Christi 1992, pet. ref'd). 
Furthermore, the trial court's prompt admonition for the jury to disregard the question and answer
adequately preserved appellant's rights. Ordinarily, a prompt instruction to disregard will cure
error associated with an improper question and answer. Ovalle v. State, 13 S.W.3d 774, 783
(Tex. Crim. App. 2000). The asking of an improper question will seldom call for a mistrial,
because, in most cases, any harm can be cured by an instruction to disregard. Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999); Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex.
Crim. App. 1990); Webster v. State, 26 S.W.3d 717, 723 (Tex. App.--Waco 2000, no pet.). In
the context of this case, the trial court's admonition for the jury to disregard the question and
answer was sufficient. The trial court did not abuse its discretion in refusing to grant a mistrial. 
We overrule appellant's third point of error.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Yeakel, Patterson and Dally*

Affirmed

Filed: February 28, 2001

Do Not Publish






*