

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00884-CR

**EX PARTE Thomas A. PENA**

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR12630-W1
Honorable Lorina I. Rummel, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Jason Pulliam, Justice

Delivered and Filed:  December 16, 2015

AFFIRMED

Appellant Thomas A. Pena filed an application for writ of habeas corpus in the trial court pursuant to article 11.072 of the Texas Code of Criminal Procedure.  The trial court denied Pena's application.  On appeal, Pena contends the trial court erred in failing to find: (1) his trial counsel was ineffective; and (2) his plea was involuntary.  We affirm the trial court's order denying Pena's application.

## BACKGROUND

On December 22, 2010, Pena was indicted on two counts — sexual assault of a child and indecency with a child.  Pursuant to a plea bargain agreement with the State, Pena pled nolo contendere to indecency with a child, and the State dismissed the charge of sexual assault of a child.  In accordance with the parties' agreement, the trial court deferred a finding of guilt and

placed Pena on community supervision for a period of seven years.[1] Pena did not appeal from the order deferring adjudication.

In 2014, Pena filed an application for writ of habeas corpus pursuant article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 §§ 1, 2. (West 2015). In his application, Pena claimed his trial counsel failed to provide effective assistance of counsel, alleging numerous failures by trial counsel. Pena further claimed that as a result of trial counsel's deficient performance, his plea was involuntary. In support of his application, Pena attached a number of exhibits, including the trial record, affidavits from several persons purporting to support Pena's claims of ineffective assistance, medical reports of both Pena and the complainant, police reports, as well as video recordings of police interrogations of both Pena and the complainant. The trial court ordered Pena's trial counsel to submit an affidavit in response to Pena's allegations of ineffective assistance. Trial counsel submitted THE mandated affidavit, maintaining his representation was effective.

Ultimately, the trial court denied Pena's application, finding the evidence did not support Pena's claim of ineffective assistance.[2] The court found the statements contained in trial counsel's affidavit to be truthful and credible, and incorporated counsel's affidavit as part of its findings of fact. Furthermore, regarding Pena's claim that his plea was not voluntary, the court found the plea

---

[1] The State had actually recommended a period of ten years with regard to the length of community supervision.

[2] After notice of appeal was filed, the trial court rendered an order withdrawing its order denying Pena's application and transferring the matter to the magistrate court for review of Pena's application. According to a motion filed by Pena's appellate counsel, the trial court took this action because of concerns regarding a potential conflict of interest given the trial judge's prior service as prosecutor in the same trial court. However, the trial court's plenary power had expired, rendering its order void. The parties agreed, as did we, that in light of the trial court's potential conflict of interest, this court should order the matter abated to the trial court to allow the court to reconsider its order and potentially render a new order. In response to our order, the trial court rendered a new order withdrawing its original order and transferring the matter to the magistrate court to allow the magistrate to review and rule on Pena's application. After review, the magistrate court rendered an order denying Pena's application. After the magistrate court rendered its order, the parties completed briefing in this court based on its order. It is that order we review on appeal.

was made knowingly and voluntarily. Pena filed this appeal, challenging the trial court's denial of his application.

## ANALYSIS

As noted above, Pena contends his trial counsel was ineffective and his plea was involuntary. Although set out as separate points of error, Pena essentially contends he received ineffective assistance of counsel, *resulting* in an involuntary plea. In other words, but for counsel's ineffectiveness, Pena would not have pled nolo contendere, but would have proceeded to trial. Nevertheless, we shall address each issue separately.

### *Ineffective Assistance of Counsel*

Pena, in his application and appellate brief, alleged several ways in which he contends his trial counsel was deficient in his representation of Pena with regard to the charges of sexual assault of a child and indecency with a child. Pena claims trial counsel was deficient in: (1) failing to investigate and interview witnesses in preparation for trial; (2) failing to attend scheduled client meetings and court settings; (3) failing to consider the importance of DNA evidence; (4) failing to review the victim's statement prior to trial; (5) failing to pursue the motion to suppress to a final ruling; and (6) failing to subpoena certain witnesses for the suppression hearing. We will address each claim in turn.

### *Standard of Review*

An applicant seeking post-conviction habeas corpus relief must prove his claims by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In an article 11.072 habeas case, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (citing TEX. CODE CRIM. PROC. ANN. art. 11.072, §§ 7, 8). In our review of a trial court's decision denying habeas corpus relief, we view the facts in the light most favorable to the

trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). When a habeas court has made written findings of fact and conclusions of law in support of its order in a case in which the applicant seeks relief from a trial court's order or judgment of conviction granting community supervision, courts of appeals review the habeas court's order under the standard articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *Guerrero*, 400 S.W.3d at 583 (citing TEX. CODE CRIM. PROC. ANN. art. 11.072, §§ 7, 8); *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). Almost total deference is afforded to the trial court's findings of fact that are supported by the record, especially when such findings are based on the credibility and demeanor of a witness. *Guerrero*, 400 S.W.3d at 583 (citing *Guzman*, 955 S.W.2d at 89). This degree of deference is afforded to a trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories." *Guerrero*, 400 S.W.3d at 583 (citing TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(a)); *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006). However, if resolution of the ultimate issues turns upon the application of the law absent any evaluation of credibility or demeanor of a witness, the trial court's decision denying habeas corpus relief is reviewed de novo. *Peterson*, 117 S.W.3d at 819; *see Ex parte Skelton*, 434 S.W.3d 709, 717 (Tex. App.—San Antonio 2014, no pet.).

*Applicable Law*

The right to receive effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Claims of ineffective assistance of counsel "are cognizable on habeas review, and to determine whether to grant habeas relief for ineffective assistance of counsel, Texas courts apply the" two-pronged *Strickland* test. *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013); *Martinez*, 330 S.W.3d at 900 (citing *Strickland v. Washington*, 466

U.S. 668, 687 (1984)).  When, as here, a defendant challenges the validity of his plea on the basis that he received ineffective assistance of counsel relative to the plea process, *Strickland* applies. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Ex parte Ali*, 368 S.W.3d 827, 833 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).  Under the *Strickland* test, a defendant must prove by a preponderance of the evidence that: (1) trial counsel's performance was deficient; and (2) this deficient performance prejudiced his defense.  *Moore*, 395 S.W.3d at 157; *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004).  An applicant's allegations of ineffectiveness "must be firmly founded in the record" and "the record must affirmatively demonstrate the meritorious nature of the claim."  *Nailor*, 149 S.W.3d at 130 (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (same).  If an applicant fails to satisfy either prong, the reviewing court need not consider the other prong.  *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

To meet the first prong of the *Strickland* test, Pena had to establish by a preponderance of the evidence that his trial counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and the circumstances of the case.  *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900.  In the context of a plea proceeding, where the defendant is represented by counsel and enters a plea based on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."  *Ali*, 368 S.W.3d at 833 (quoting *McCann v. Richardson*, 397 U.S. 759, 771 (1970)).  We will not second-guess counsel's tactical decision unless those decisions were "so outrageous that no competent attorney would have engaged in it."  *Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010).

As to the second prong of the *Strickland* test, Pena must show he was prejudiced by counsel's deficient performance.  *See Strickland*, 466 U.S. at 687; *Martinez*, 330 S.W.3d at 900–

01. We evaluate prejudice based on the overall context of the record. *See Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993). When, as here, a defendant challenges the voluntariness of his plea on the ground that his counsel was ineffective, the prejudice inquiry of the *Strickland* test is modified and requires the defendant to show his attorney's deficient performance affected the outcome of the plea process. *See Ali*, 368 S.W.3d at 833. Therefore, to satisfy the second prong, Pena was required to prove there is a reasonable probability that, but for his attorney's deficient representation, he would not have pled nolo contendere to the charge of indecency with a child, but would have insisted on going to trial. *See id.*; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (en banc), *overruled in part on other grounds by Taylor v. State*, 109 S.W.3d 443 (Tex. Crim. App. 2003). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Thompson*, 9 S.W.3d at 812–13.

*Application*

As a preliminary matter, Pena challenges the trial court's findings of fact based on the absence of a hearing on his application. Specifically he states, "[t]here was no hearing granted on the writ application and therefore no testimony" supports the trial court's findings. Pena asserts that the "court's findings are based on affidavits and exhibits . . . and said items do not support the [trial court's] findings. . . ." However, in a habeas proceeding under article 11.072, a trial court is not required to conduct a hearing, but may order affidavits and consider any affidavits or other evidence attached to the habeas application and the State's response. *Ex parte Fassi*, 388 S.W.3d 881, 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) (holding that nothing in article 11.072 requires trial court to hold hearing on application, and "the legislature did not intend to prohibit the trial court from considering such evidence without a hearing.")); *see* TEX. CODE CRIM. PROC. ANN. art.

11.072, §§ (b), (c). Thus, "even when no witnesses testify and all evidence is submitted through affidavits, depositions or interrogatories," we must give almost total deference to the trial court's findings that are supported by the record, which includes evidence attached to the application, response, and affidavits ordered by the trial court. *Guerrero*, 400 S.W.3d at 583. Accordingly, we defer to the trial court's factual findings, notwithstanding the fact that evidence supporting such findings was provided, at least in part, via affidavit. *Id.*; *see also Ali*, 368 S.W.3d at 831–32. Accordingly, Pena's apparent contention that the absence of an evidentiary hearing nullifies the trial court's findings is incorrect, and we will proceed to review Pena's allegation of ineffective assistance based on the evidence relied upon by the trial court.

In addition to the foregoing, it is important to our review of Pena's claims of ineffective assistance to understand the circumstances surrounding Pena's arrest and his version of events — a version he contends could have been corroborated but for his attorney's ineffectiveness. It is also necessary to provide some procedural background. According to the evidence at the hearing on Pena's motion to suppress, Officer Ronnie Williams noticed a vehicle, with the driver's side door partially open, parked in an area where several burglaries had occurred. Officer Williams decided to "check up on the vehicle and — and see what was going on." The officer testified that when he approached the vehicle, those inside seemed "startled, real nervous." The passenger, later identified as J.S., appeared as if she was leaning toward the driver's side, but when he approached, she was attempting "to get back on her side." According to the officer, the driver — subsequently identified as Pena — appeared to be trying to pull up his pants. Officer Williams stated in his report that Pena was not wearing underwear.

When the officer asked the pair what was going on, J.S. told the officer Pena was her uncle. Pena claimed he immediately told the officer this was not true. The officer believed "some sexual activity" was occurring because when he approached, Pena seemed startled and was trying to pull

up his pants. Officer Williams testified he asked Pena to get out of the car because Pena and J.S. were continually interrupting each other as he was trying to question them. According to the officer, when Pena got out of the vehicle, he could see Pena's pubic hair . . . and his penis." The officer subsequently admitted that when evidence was taken from Pena by the sexual assault nurse examiner ("SANE"), he noted Pena had minimal pubic hair. However, he specifically stated during the suppression hearing that when he "saw [Pena] pulling up his pants, it looked like he had pubic hair."

The officer testified Pena threw some tissues on the ground as he exited the vehicle. Officer Williams subsequently collected the tissues, which tested positive for Pena's seminal fluid. Pena made statements to the officer regarding a medical condition that caused Pena to spontaneously ejaculate, forcing him to use tissues to collect the semen. Pena also claimed to have a heart condition and trouble breathing. Pena claimed his clothing was "loose" because his brother had advised him to loosen his clothing to deal with his breathing issues. Officer Williams offered to call EMS, but Pena declined.

The officer subsequently turned his attention to J.S. Based on his conversation with her, he determined she was a minor — fifteen-years-old. The officer also determined Pena was not her uncle. Given J.S.'s age, the fact that Pena's penis was exposed, and the appearance of sexual activity, Officer Williams contacted detectives, who instructed him to transport Pena to the police station. The officer took Pena to the police station for additional questioning. Both Pena and J.S. were interviewed by detectives. Thereafter, both were taken to see a SANE for evidence collection and an examination. Pena refused to consent to a search, but a search was conducted without his consent. Lab tests established that no semen was found in J.S.'s mouth, and no saliva from J.S. was found on Pena's penis. However, as noted above, Pena's seminal fluid was found in the tissues he discarded when he stepped out of the vehicle.

J.S. ultimately claimed she performed oral sex on Pena in exchange for his agreement to restore her cellular service. J.S. stated Pena pulled his pants down to his ankles and he was not wearing underwear. J.S. told detectives the sexual activity took place before Officer Williams confronted them, and that Pena had ejaculated on the front seat, using tissues to wipe up the semen. She told the SANE Pena ejaculated on the seat because she refused to "swallow" his semen, despite his offer to take her shopping if she did. According to J.S., Pena then wiped the seat with the tissues. A cellular phone belonging to Pena included sexually suggestive text messages between Pena and the cellular phone found in J.S.'s possession. According to the police report, the messages corroborated J.S.'s claim regarding Pena's request for oral sex in exchange for restoring J.S.'s cellular service.

At the scene, Officer Williams searched the vehicle, claiming he feared for his safety, but Pena pointed out the officer left him uncuffed for the duration of the search. Officer Williams called for additional officers as well as a K-9 unit — though he could not remember if the decision to call the K-9 unit was his or that of another officer. However, after a search by officers and the dog, no drugs were found.

Pena testified on his own behalf at the suppression hearing. Pena explained that during his military service he was injured and hospitalized when he returned to the United States. According to Pena, he was treated for a "mild traumatic brain injury[,] superficial wounds to [his] thorax and Posttraumatic Stress Disorder." He testified his PTSD results in depleted magnesium, which causes his heart to "skip and stop." Pena stated that in addition to the foregoing, he was diagnosed with "exacerbated manic depressive or bipolar conditions." He also suffered damage to his back, knees, and ankle, as well as damage to his pancreas and kidneys due to painkillers and other medications.

Pena testified that at the time of his arrest, he was under the influence of several medications, including Zoloft, which he previously reported to medical authorities caused "involuntary seminal emissions." Pena also reported that his medications resulted in erectile dysfunction and an inability to become aroused. Based on the foregoing, Pena contends he could not have engaged in sexual activity as charged — lacking the desire and ability to engage in sexual activity.

As for what was occurring when Officer Williams approached, Pena testified he was on hold with his cell phone carrier, checking his account. He testified the female passenger, J.S., was known to him and that he had been providing financial support for approximately eight months to J.S., her sister, and her mother. Pena stated he met with J.S. that day to "retrieve a cell phone from her that I just wanted to turn off and turn back and not have anything to do with this family anymore." Pena stated he no longer desired to help the family because they were "bad people" and he had recently reunited with his ex-girlfriend.

Pena denied Officer Williams's claim that his pants were down. Rather, he stated his pants were up, but the top button was undone because the pants were too tight because of weight gain due to his medications. He also claimed the officer could not have seen his groin area because due to weight gain, his stomach covered his groin area.

Pena also testified that during the search of his vehicle, the officer opened J.S.'s purse and found marijuana, a pipe, cigarettes, and "cigarillo papers." At that point, the officer told J.S. she was under arrest and handcuffed her. Officer Williams denied handcuffing J.S. According to Pena, a female officer arrived, uncuffed J.S., and questioned her out of Pena's hearing.

After a bit more testimony from Pena during the suppression hearing, the trial court recessed the hearing until the next morning. However, the next morning the parties did not continue the suppression hearing. Rather, the trial court stated it was bringing in a panel for voir

dire. Pena's counsel advised the court Pena was going to enter a "no contest plea." The trial court told Pena's trial counsel to get the paperwork in order. Apparently, after the suppression hearing recessed the day before, the State offered Pena a plea bargain. According to record statements by Pena's trial counsel, the State advised him that if Pena continued with the suppression hearing to a ruling, the current plea bargain offer — whereby the State would waive the charge of sexual assault of a child and allow Pena to plead to indecency with a child — would be off the table. Trial counsel communicated this to Pena. However, when trial counsel reviewed the plea papers, Pena was required to plead to the more serious charge. Pena declined on the record. The State denied trial counsel's claim about continuing the suppression hearing, stating the original plea offer was off the table because the State had to bring J.S. to the courthouse. Thus, it appeared there was no deal and the trial court brought in the venire.

The parties then proceeded to conduct voir dire. Before voir dire was completed, the trial court recessed for lunch. However, when the parties returned from the lunch break, Pena's trial counsel informed the court that pursuant to a plea agreement, Pena wished to enter a plea. At that point, the trial court informed Pena of his rights to a jury trial, the right to cross-examine witnesses, etc. Pena affirmatively stated he was choosing to give up those rights. The State advised the court it was waiving and abandoning the sexual assault of a child count in the indictment and proceeding only on the indecency with a child count. The trial court then advised Pena of the range of punishment — two to ten years' confinement and a fine up to $10,000.00, and Pena stated he understood. The State then explained that pursuant to the plea agreement, it was recommending Pena be placed on ten years' deferred adjudication. Pena stated he understood the agreement. When asked by the trial court, Pena stated he was pleading nolo contendere because after discussing the matter with his attorney, it was the best thing for him to do; he denied being forced into the plea. The trial court accepted the plea, finding it was voluntarily entered, and sentenced

Pena to seven years' deferred adjudication probation — three less than that recommended by the State. The trial court also advised Pena to thank his trial counsel because "[h]e did an extremely good job for you."

1. *Failure to Investigate and Interview Witnesses in Preparation for Trial*

An attorney has a duty to reasonably investigate or make a reasonable decision that certain investigations are unnecessary. *Wright v. State*, 223 S.W.3d 36, 42 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003)). Pena contends his trial counsel was ineffective because he failed to perform an independent investigation or prepare for trial, specifically failing to "contact or attempt to contact . . . potential witnesses which would have provided powerful and material testimony corroborating his version of events." Pena claims his defense "revolved around discrediting the complainant and corroborating his medical condition." Pena argues "no viable investigation was performed, which placed trial counsel in a position where the defense would not have been able to refute any evidence or any other extraneous matters that would have been brought out during Mr. Pena's trial." Pena claims this failure to investigate and prepare forced him to decide "whether to go to trial with no defense and no witnesses, or accept a plea deal."

Pena contends his witnesses would have: (1) corroborated his medical claims — thereby showing he could not engage in sexual activity; (2) established the sexually suggestive text messages found on cellular phone in J.S.'s possession at the time of Pena's arrest were actually from another woman; and (3) discredited J.S. — the witness upon which the entire case against him "hinged." Pena claims the State's case "hinged" upon J.S. because Officer Williams never saw Pena's penis exposed in J.S.'s presence. But, because trial counsel never contacted the witnesses who could provide evidence in support of his defense, Pena had no choice but to accept a plea deal.

As to Pena's claim that the State's case "hinged" solely on J.S.'s testimony, Pena provided a copy of the record from the suppression hearing as an exhibit to his application. Based on the record, the trial court could have determined the State's case did not "hinge" solely on J.S., negating Pena's contention that but for his trial counsel's failure to investigate and prepare witnesses regarding J.S.'s credibility, he would not have entered a plea to the offense of indecency with a child. In his application and his brief, Pena distorts Officer William's testimony to suggest the officer never saw Pena's penis exposed in the victim's presence. We find the trial court could have determined otherwise, and thereby there was more than one witness to the offense. Contrary to Pena's interpretation of Officer William's testimony, the officer specifically testified that when he approached the vehicle, Pena's pants were down and when he exited the vehicle he saw Pena's penis, a clear implication that Pena's pants were down and his penis exposed when he was sitting in the vehicle with J.S.

With regard to his medical conditions and medications, Pena presented an affidavit from his ex-fiancé, who confirmed some of Pena's claims, specifically his claim of sporadic, uncontrolled ejaculations. She also confirmed Pena's lack of desire and inability to engage in sexual activity without the benefit of Cialis, Viagra, or vacuum therapy. In her affidavit, she admitted she and Pena have a daughter together and have a good relationship.

In response to the foregoing testimony, Pena's trial counsel stated in his affidavit that he met with the ex-fiancé and "already knew the information she wanted to offer," based on previous discussions with Pena. Counsel testified Pena failed to provide him with the ex-fiancé's contact information, adding he did "not recall [the ex-fiancé] ever calling him with any new information."

Additionally, as to the text messages, a witness testified by affidavit that Pena gave her the cellular phone that once belonged to J.S., but later took it back and returned it to J.S., who would be assuming financial responsibility for the phone. The witness testified Pena told her not to use

the phone "unless it was an emergency," but then averred that "right before [she] gave the phone back to Pena, they exchanged text messages using the phone.

As to the potential witness, trial counsel averred that on more than one occasion, he asked Pena to provide him with the witness's contact information, but Pena never did. Trial counsel also denied ever receiving any telephone calls from the witness. As to the substance of her proposed testimony, trial counsel specifically noted she did not provide any specificity as to the nature of the text messages, never confirming that such texts were of a sexual nature. Moreover, the witness never testified to any sexual relationship with Pena, stating only that he was a friend. Finally, trial counsel pointed out this witness never explained how J.S. somehow knew the content of the sexually suggestive messages — as provided in her statement — if the witness had the phone and sent the messages.

Pena also points to the affidavits from several potential witnesses who would have testified to the victim's alleged lack of veracity — specifically about her age — and general poor character — dropping out of school, using marijuana, drinking while underage. However, trial counsel countered in his affidavit that the witnesses' claims about J.S. would not be sufficient for admission with regard to J.S.'s character for truthfulness. He also opined that certain witnesses had no basis "to know the reputation in the community of the complainant's credibility." Generally, by their own admission, these witnesses had merely heard about J.S. from another source or had met her "once briefly."

Finally, trial counsel stated he spoke with witnesses Pena brought to the office and spoke to other potential witnesses by telephone. Trial counsel swore that despite "numerous" requests, Pena never provided him with contact information for any of the witnesses he *now* contends would have supported his contentions. Nor did any of these witnesses contact trial counsel. These witnesses were allegedly those known to Pena, so trial counsel failed to see how they could be

"unavailable" to Pena. Pena never advised him that his witnesses would require a subpoena as they were friendly, cooperating witnesses. Moreover, based on the fact that only J.S. and Officer Williams witnessed the contact between the parties, trial counsel believed J.S. was really the only person who could offer direct, relevant information. Trial counsel attempted to contact her at the email address provided by Pena, as well as through social media. Neither contact was successful.

As set forth above, the burden was on Pena to prove his claims of ineffectiveness by a preponderance of the evidence. *See Martinez*, 330 S.W.3d at 901; *Richardson*, 70 S.W.3d at 870. The factual evidence presented to the trial court — supporting and opposing Pena's claims that trial counsel failed to adequately investigate potential witnesses or prepare such witness for trial — was, at best, conflicting. The ultimate decision turned on credibility — that of Pena, his proposed witnesses, and trial counsel. As such, we must afford total deference to the trial court's finding that trial counsel's statements in his affidavit were "truthful and credible" and support trial counsel's claim that he rendered effective assistance to Pena. *See Guerrero*, 400 S.W.3d at 583 (holding total deference is afforded to trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories."). Accordingly, given the strong presumption that trial counsel's performance was effective and the required deference to the trial court's findings, we cannot say the trial court erred in concluding trial counsel was not ineffective with regard to his investigation and preparation in this case. Because we find the trial court did not err in concluding counsel's performance was not deficient, we need not consider whether counsel's conduct resulted in Pena entering a plea rather than proceeding to trial. *See Williams*, 301 S.W.3d at 687.

2. *Failure to Attend Scheduled Client Meetings and Court Settings*

Pena next alleges trial counsel was ineffective because he failed to attend scheduled client meetings, failed to attend, or was late for, court settings, and failed to return numerous telephone

calls. Pena provided affidavits from his father and former fiancé in support of this contention. Pena's father testified that on two occasions, he and Pena were supposed to meet with trial counsel, but counsel inexplicably failed to show up. Pena's fiancé, who was slated to attend one of the two meetings with Pena and his father as well as another meeting, testified trial counsel failed to appear for that meeting. She also averred that counsel was a no-show for a meeting with her and Pena. According to Pena, the purpose of these meetings was to determine the status of his case and the defense strategy. Pena also wanted his father to meet with trial counsel so he could "decide for himself what type of an attorney [trial counsel] was."

In response to these allegations, trial counsel admitted there were times when he could not meet with Pena because he had other matters to attend to. However, trial counsel testified he had "numerous and lengthy conferences with [Pena]" "conferring ad infinitum about his case." He testified he met with Pena "multiple times in my office and in court." However, despite the numerous meetings, Pena constantly called trial counsel's cell phone and sent text messages. According to trial counsel, Pena "wanted to meet weekly and communicate even more often but he rarely had any new information to discuss, only wanting to rehash things already discussed. Given how many times we did confer by phone and text, and how lengthy the conversations were, missing some appointments did not affect his case."

Pena also claims counsel "failed to attend court settings or arrived late when he did," again, supporting his allegation with affidavits of his father and former fiancé. Trial counsel admitted being late "at some hearings, sometimes later than others" and admitted "there may have been an occasion when I didn't appear." Trial counsel stated his tardiness or absence at hearings "was due to attending other hearings first." Trial counsel explained that he often has simultaneous settings, and that at certain times, other settings — trial settings, settings in older cases, settings where the defendant is in custody — took priority over a setting in Pena's case. He further explained that

some trial judges will not permit an attorney to leave a courtroom for another setting until the current matter is resolved, resulting in the attorney failing to appear or arriving late in a second courtroom. However, despite being late or failing to appear on occasion, trial counsel swore Pena's case was not affected given his numerous meetings and appearances with Pena.

It is undisputed that trial counsel missed two or three meetings, failed to return some telephone calls, and was sometimes late or failed to appear for certain settings in Pena's case. However, counsel's representation is judged not based on isolated incidents, but on the totality of the representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). The record shows trial counsel represented Pena for approximately two and a half years, meeting and speaking with him during "numerous and lengthy conferences." We cannot say the trial court erred in determining that missing a few meetings, a setting or two, and failing to return some telephone calls over the course of two and a half years — particularly in light of the explanation provided by trial counsel in his affidavit — did not rise to the level of deficient performance. And, even if we were to conclude it constituted deficient representation, Pena has not proved that but for the missed meetings, etc. he would not have pled nolo contendere to the charge of indecency with a child, but would have insisted on going to trial. *See Strickland*, 466 U.S. at 690; *Ali*, 368 S.W.3d at 833. Pena does not explain, much less prove, how a few missed meetings and settings or late appearances resulted in his decision to enter a plea. Accordingly, we hold the trial court did not err in denying Pena's application based on missed meetings, late or missed appearances, and unreturned telephone calls.

3. *Failure to Consider Importance of DNA Evidence*

Pena contends his trial counsel improperly "dismissed the importance of exonerating DNA evidence . . . which finally proved . . . there was no sexual contact between him and the complainant." After a hearing, trial counsel informed Pena that DNA testing established there had

been no mixing of his DNA with that of J.S. A friend who was with Pena at the time provided an affidavit in which she states trial counsel advised them that the testing showed "neither [Pena] nor his accuser had touched sexually, there was no crossing of their DNA." Although Pena was "ecstatic" over the revelation, he claims he was disappointed in trial counsel's reaction. As trial counsel stated in his affidavit in response to Pena's application, "I did tell [Pena] I thought the prosecution would argue to the jury and perhaps successfully so, that just because [Pena's] and the complainants DNA had not crossed to one another . . ., that complainant's testimony along with the circumstantial evidence, could be sufficient for a jury to believe that the offense occurred." Trial counsel's concern — despite the absence of mixed DNA — may have stemmed from the fact that J.S. told authorities Pena did not ejaculate in her mouth; rather, he ejaculated on the seat and wiped up the ejaculate with tissues. Nevertheless, Pena contends the DNA evidence proved there was no sexual contact with J.S. and counsel's "dismissal" of the importance of the evidence "weighed heavily on [his] mind when he 'chose' to plead no contest in the case at bar."

Pena fails to prove by a preponderance of the evidence that trial counsel's explanation regarding how he believed the State might use the DNA evidence constituted deficient performance or unreasonable trial strategy. Explaining to a client how the State might use or present evidence , whether the DNA evidence would or would not exonerate Pena, is clearly within the objective standard of reasonableness based on prevailing professional norms, especially under the circumstances here. *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900. We therefore hold the trial court properly concluded this action by trial counsel did not constitute deficient performance.

4. *Failure to Review Victim's Statement Prior to Trial*

Pena claims trial counsel "on the eve of trial, in open court, [counsel] admitted that he had not reviewed the complainant's recorded video statement in its entirety." Thus, Pena argues trial

counsel "was not in a position to adequately advise Mr. Pena about a plea since he had not reviewed all the evidence," further asserting trial counsel's advice was "erroneous because it could not have been based on a complete review of the facts and evidence in the case at bar."

At the motion to suppress hearing, trial counsel stated that he tried to look at J.S.'s DVD statement the day before, but was unable to review it due to computer problems. However, he then stated that he and Pena had "partially" reviewed it, but never had a chance to "review it completely." Despite the foregoing, in his affidavit, trial counsel specifically stated that Pena's claim that he did not review the complainant's statement was "simply untrue," averring that he and Pena "reviewed the complainant's video statement together." Trial counsel goes on to state that despite Pena's claim that authorities cajoled J.S. into making a false statement against Pena, J.S.'s statement was "markedly detailed as to how the situation unfolded and what specific acts she claimed ultimately transpired." Moreover, counsel testified the he "personally spoke" to J.S. before Pena entered his plea and "she was very clear that what she alleged had in fact happened and that she was going to testify to it if needed." Trial counsel stated J.S.'s presence and determination to testify convinced Pena to enter a plea. Counsel stated that if Pena had not entered a plea, he would have explored any improper behavior by authorities and any discrepancies between the victim's DVD statement and her trial testimony.

There is an apparent conflict with regard to trial counsel's statements regarding his review of J.S.'s DVD statement. At the hearing on the motion on the motion to suppress, trial counsel seemed to state he had not completely reviewed the statement, but in his affidavit he affirmatively denied Pena's claim that he failed to review the statement, stating he and Pena reviewed the statement together. Credibility determinations are for the trial court and the trial court — who reviewed the hearing from the motion to suppress and trial counsel's affidavit — specifically found trial counsel's affidavit testimony credible. We must afford total deference to the trial court's

finding that trial counsel's statements in his affidavit were "truthful and credible." *Guerrero*, 400 S.W.3d at 583 (holding that total deference is afforded to trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories."). Accordingly, given the required deference to the trial court's findings, we cannot say the trial court erred in finding trial counsel reviewed the victim's statement, rendering his performance within the objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900.

5. *Failure to Pursue Motion to Suppress to Final Ruling*

Pena also contends his trial counsel "was ineffective for failing to pursue the suppression hearing to a ruling." As described above, the trial court conducted a partial hearing on Pena's motion to suppress. However, the trial court recessed the hearing and then the next day, rather than resuming the hearing, proceeded to voir dire. In his affidavit, trial counsel explained the absence of a ruling. Trial counsel averred that when the trial court brought in the venire without completing the suppression hearing, he questioned the court's action. Trial counsel testified the trial court advised that it had decided to "carry the motion with the trial." Trial counsel stated in his affidavit that he informed Pena about the trial court's decision to proceed to trial and carry the motion along. At that point, Pena emphatically advised trial counsel, **"I don't want a trial."** (emphasis in the original). Thereafter, the State agreed to allow Pena to plead to the lower charge of indecency and Pena entered his plea. Trial counsel explained "[t]he only reason [a] ruling was not obtained was that [Pena] decided to take a plea instead of continuing to trial. The judge had told me and I had informed [Pena] the judge would make a ruling during the trial. [Pena] was very clear to me that he didn't want to go on to trial. The judge began jury selection, and but for [Pena] deciding to take a plea, we would have continued and eventually obtained a ruling on the motion."

The Texas Court of Criminal Appeals has held that a trial court may resolve a motion to suppress in a pretrial hearing, but it is not required to do so. *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012); *see Russell v. State*, 904 S.W.2d 191, 200 (Tex. App.—Amarillo 1995, pet. ref'd). Rather, the trial court may choose to "carry the motion over for trial." *Black*, 362 S.W.3d at 633; *see Russell*, 904 S.W.2d at 200. Moreover, a trial court may choose to begin a suppression hearing pretrial, and then reopen the matter during trial. *Black*, 362 S.W.3d at 633–34. A trial court may take such action because a pretrial ruling on a motion to suppress is interlocutory in nature, and like any other motion regarding the admissibility of evidence, it may be revisited any time during the course of the trial at the trial court's discretion. *Id.*

Based on trial counsel's affidavit, which the trial court was permitted to accept as credible, the trial court decided to carry the suppression motion with the case. *Guerrero*, 400 S.W.3d at 583 (holding that total deference is afforded to trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories."). In other words, trial counsel's affidavit provides evidence that he did not ultimately obtain a ruling on the motion to suppress because the trial court had decided, in its discretion, to carry the motion with the trial. However, and also according to trial counsel's affidavit, Pena decided to accept the State's offer to plead to the indecency count rather than continue to trial. As trial counsel stated in his affidavit: "The only reason the [sic] a ruling was not obtained was that [Pena] decided to take a plea instead of continuing on to trial . . . but for [Pena] deciding to take a plea, we would have continued and eventually obtain a ruling on the motion." Counsel further explained:

> As any trial attorney knows, trials are a very dynamic environment with many variables that can change quickly and often beyond the attorney's control. One of those variables is how the judge decided to handle a motion to suppress in any given case. In this case, despite having begun testimony on the motion, the judge decided to begin jury selection and rule on the motion during trial.

Based on the foregoing, we hold the trial court was within its discretion to find trial counsel's explanation — the motion was being carried and no ruling was obtained because of the intervening plea — credible. *See Guerrero*, 400 S.W.3d at 583 (holding total deference is afforded to trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories."). Moreover, the trial court was within its discretion in determining trial counsel's actions with regard to the motion to suppress were within the objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 900.

### 6. *Failure to Subpoena Witnesses*

Finally, Pena asserts his trial counsel was ineffective because he failed to subpoena certain witnesses for the suppression hearing. Pena specifically points to trial counsel's failure to subpoena other officers, who were on scene at the time of his arrest, to testify at the suppression hearing. Trial counsel admitted that he "would like to call the other officers involved," but he relied on subpoenas issued by the State with regard to witnesses, as the trial court advised he could. He was not aware that the State did not subpoena officers; rather, the State's practice was simply to request an officer's presence at the particular hearing.

However, in his affidavit in response to Pena's application, trial counsel testified he did not subpoena any witnesses because the State bore the burden of proof given the officer arrested Pena without a warrant. Trial counsel stated the State "brought the arresting officer, *had others who had responded to the scene present and ready to testify*, and had the complainant present as well to testify." The trial court, in its findings, stated it found trial counsel's statements credible and truthful. And therefore, it was within the trial court's discretion to find trial counsel's statement — that the other officers who had responded at the time of Pena's arrest were present and ready to testify — was factually accurate. *See Guerrero*, 400 S.W.3d at 583 (holding that total

deference is afforded to trial court's findings of fact "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories.").

Moreover, as set in our analysis relating to Pena's complaints regarding counsel's failure to pursue the suppression hearing to a ruling, the pre-trial suppression hearing was, at the trial court's discretion, recessed and ordered to be carried with the trial. Trial counsel explained this to Pena. The trial court's decision to carry the motion with the trial would have given trial counsel the opportunity to subpoena any witnesses that might be necessary in pursuing the motion to suppress during trial. However, as noted above, according to trial counsel's affidavit, Pena decided to accept the State's offer to plead to the indecency count rather than continue to trial. Thus, the trial court would have been within its discretion in concluding Pena failed to prove that but for trial counsel's failure to subpoena witnesses for the pretrial hearing, Pena would not have pled nolo contendere to the charge of indecency with a child, but would have insisted on going to trial. *See Strickland*, 466 U.S. at 690; *Ali*, 368 S.W.3d at 833. The trial court could have determined — and we agree — that once the trial court decided to carry the suppression motion with the trial — any deficiency in failing to subpoena officers for the pretrial hearing was not an action that contributed to Pena's decision to plead nolo contendere — trial counsel could have subpoenaed the officers for trial if Pena had not pled.

### *Involuntary Plea*

In his second point of error, Pena contends the trial court erred in failing to find his plea was involuntary. Pena contends trial counsel's ineffectiveness rendered his plea involuntary. We disagree.

"A record that indicates that the trial court properly admonished the defendant presents a prima facie showing that the . . . plea was made voluntarily and knowingly." *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Martinez v. State*, 981

S.W.2d 195, 197 (Tex. Crim. App. 1998); *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).  If the record establishes the trial court properly admonished the defendant, the burden shifts to the defendant to show he entered the plea in question without understanding its consequences.  *Labib*, 239 S.W.3d at 332; *Arreola*, 207 S.W.3d at 391.  When a defendant states at the plea hearing that he understands the nature of his plea and it is voluntary, he then has a heavy burden to show the plea was involuntary.  *Labib*, 239 S.W.3d at 332; *Arreola*, 207 S.W.3d at 391.  However, a plea is not voluntary if the defendant did not receive effective assistance of counsel because the choice to enter the plea was not an informed choice.  *Labib*, 239 S.W.3d at 332. (citing *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980)).

At the plea hearing, the following exchange took place:

THE COURT: Back on the record in Texas versus Thomas Pena.  Mr. Pena, [trial counsel], come on up.  We are in jury selection.  My understanding is that the defendant wishes to enter a plea, is that correct, [trial counsel]?

[TRIAL COUNSEL]: Yes, Your Honor.

THE COURT: Mr. Pena, you have the right to a jury trial.  You have the right to cross-examine witnesses.  You have the right to remain silent.  You have chosen to give up those rights and proceed with a plea today; is that right?

[PENA]: Yes, I have.

\* \* \*
THE COURT: . . . Mr. Pena, the range of punishment for Count 2 is a minimum of 2 years to a maximum of 10 years TDC, an optional fine up to $10,000.  Do you understand the full range of punishment?

[PENA]: Yes, I do.

THE COURT: State is there an agreement?

THE STATE: Yes, Judge.  It's going to be for deferred adjudication.  State is recommending — well, I think the parties have agreed to recommend to the Court 10 years of deferred in exchange for going open on the third degree felony . . .

\* \* \*

THE COURT: Mr. Pena, is that the agreement?

[PENA]: Yes, Your Honor.

THE COURT: Do you understand it?

[PENA]: Yes, I do.

THE COURT: Do you understand that I'm not bound to follow it, but if I do, you cannot appeal this case to a higher court. Do you understand that?

[PENA]: Yes, sir.

\*     \*     \*

THE COURT: Mr. Pena, to the offense of . . . indecency with a child-exposure occurring July 12, 2010, how do you plead: Guilty, not guilty, or no contest?

[PENA]: Nolo contendere.

THE COURT: Are you pleading no contest because you have discussed the case with your attorney and you decided that pleading no contest is the best thing for you to do?

[PENA]: Yes, I am.

THE COURT: Has anyone forced you?

[PENA]: No, Your Honor.

THE COURT: I accept your plea as voluntary.

Because the record reflects Pena was properly admonished as to his rights, the burden — which is heavy — shifted to Pena to prove he entered his plea involuntarily, i.e., without understanding its consequences, due to ineffective assistance of counsel. *See Labib*, 239 S.W.3d at 332; *Arreola*, 207 S.W.3d at 391.

As we stated above, when a defendant contends that his plea was involuntary due to ineffective assistance of counsel, he must comply with the two-pronged *Strickland* test. *See Hill*, 474 U.S. at 58; *Ali*, 368 S.W.3d at 833; *Labib*, 239 S.W.3d at 332; *Arreola*, 207 S.W.3d at 391–92. Thus, as noted above, Pena had to prove: (1) counsel's advice or actions were outside the

range or competency demanded by attorneys in criminal cases; and (2) that but for counsel's erroneous advice or deficiencies, he would not have entered a plea, but would have proceeded to trial. *See Ali*, 368 S.W.3d at 833; *Labib*, 239 S.W.3d at 332.

In his brief, Pena argues that "due to the litany of problems outlined in Point of Error I, [he] was unable to make an intelligent choice as to whether to take a plea or not." However, as set out in detail above, we addressed Pena's numerous claims of ineffective assistance and determined he failed to establish — with regard to any allegation that trial counsel's performance was deficient and/or that but for any alleged deficiency — he would not have entered a plea. *See Ali*, 368 S.W.3d at 833; *Labib*, 239 S.W.3d at 332. Accordingly, we cannot say the trial court erred in concluding Pena's plea was voluntary based upon the previously addressed allegations of ineffective assistance.

However, in addition to the allegations of ineffectiveness raised in his first issue, Pena seems to suggest his "deteriorating" relationship with his counsel resulted in an involuntary plea. Pena points out he attempted to hire new counsel, but was unable to do so because of financial inability — pointing out the trial counsel was also his bondsman. Pena argues his attempt to hire new counsel "further deteriorated the already damaged relationship" with trial counsel and resulted in "negative ramifications" though he fails to explain the alleged negative impact. However, trial counsel, in his court-mandated affidavit, averred that although he was aware Pena attempted to hire new counsel, he was unaware his relationship with Pena was "damaged." Trial counsel also denied knowledge of the "negative ramifications" to which Pena alludes.

Pena offers only conclusions with regard to the alleged "deteriorating relationship" with trial counsel. There is nothing in the record to support a reasonable belief that his trial counsel was not going to represent him effectively. Allegations of ineffectiveness must be firmly founded in the record, and the record must demonstrate affirmatively the alleged ineffectiveness. *Nailor*,

149 S.W.3d at 130; *Goodspeed*, 187 S.W.3d at 392; *Labib*, 239 S.W.3d at 333. Furthermore, speculation concerning counsel's potential performance is improper when the record is silent in that regard. *See Labib*, 239 S.W.3d at 333.

Pena has not proved the existence of a "deteriorating relationship" or that but for the difficulties in the relationship he would not have pled nolo contendere to the charge of indecency with a child, but would have insisted on going to trial. *See Strickland*, 466 U.S. at 690; *Ali*, 368 S.W.3d at 833. Moreover, the existence of a "deteriorating" relationship was a question of fact, dependent upon the credibility of the affidavits, and the trial court was within its discretion to accept trial counsel's averment that he was unaware his relationship with Pena was in any way damaged. *See Guerrero*, 400 S.W.3d at 583; *Wheeler*, 203 S.W.3d at 325–26. Accordingly, we hold the trial court did not err in concluding Pena's plea was voluntary.

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in concluding Pena failed to establish his claim of ineffective assistance of counsel or that his plea was involuntary. We therefore overrule Pena's points of error and affirm the trial court's order denying the application for writ of habeas corpus.

Marialyn Barnard, Justice

Do Not Publish